Good morning, Your Honors. My name is Eric Slepian. I'm here on the matter of Latina Lindstrom. I appreciate the opportunity to address the Court. I would like to reserve four minutes for rebuttal. Ms. Lindstrom has endured a tortuous procedural process in pursuing her social security disability benefits. I recognize there have been multiple remands culminating in at least five administrative hearings and a ten-year delay. I want to point out that she suffers from severe impairments restricting her ability to work and has proved in each and every determination that she's unable to perform her past relevant work. The burden has been on the Commissioner of Social Security this entire time. There are many, many decisions here, many reasons for remand. Today, we're here on a 2019 ALJ decision, again denying Lindstrom benefits at step five of the sequential evaluation process. In this decision, the ALJ finds that Ms. Lindstrom can perform two jobs. One is a photocopy machine operator and the other is a laundry presser. That determination is not supported by substantial evidence. We know this as a fact because the vocational expert told us this. At the hearing, the vocational expert was initially asked if Ms. Lindstrom needed to be off-task five percent of a workday, could she sustain these two jobs? The answer was yes. On cross-examination or on further examination of the vocational consultant, the consultant was asked what if the reason for the breaks was she needed to urgently use a restroom and this is what caused her to be off-task five percent of the day. The vocational expert said in that case, those jobs were not sustainable. So when we look at the judge's decision, she specifically writes Ms. Lindstrom must be off-task five percent of the day for bathroom use. Now the judge found bathroom use off-task five percent of the day daily. The vocational expert told us even if that were to happen once a week, she'd be unable to sustain work. So here we have evidence from the vocational expert whose testimony the judge accepts that says Ms. Lindstrom would be unable to do those two jobs. We also know the decision is unsupported by substantial evidence because of another limitation the ALJ found. Specifically, the vocation, the judge assessed a limitation that says occasional and superficial interaction with co-workers in the public such that interaction was brief, casual, and incidental to the task performed. Now I was trying to argue to the judge that if you can't perform your past work, you can't learn any other job with those kind of limitations. My argument isn't the evidence. The evidence is what the vocational expert said. Initially, the vocational expert said yes, these two jobs were performable. But then on cross-examining, I inquired as to what did that mean, the incidental to the task performed, because it would appear that somebody wouldn't be able to handle criticism, direction, and supervision. And the vocational expert, with prompting from the ALJ, said if by incidental we mean brief, those two jobs are performable. But if it's a different definition of incidental, those jobs are not performable because, quote, supervision by its nature is not incidental. And here the judge did two things. She found that the interaction needed to be brief, casual, and incidental. Brief and incidental are two separate items. They cannot be the same. Vocational expert told us that these two jobs are not performable with the specific restriction assessed by the ALJ. How else do we know that this decision is not supported by substantial evidence? Well, Maxwell v. Saul indicates that two jobs is not substantial evidence of an ability to The vocational expert testimony must be reliable. It's a relaxed standard, but it needs to be reliable. At this hearing, even without those acknowledgements that these jobs aren't performable, the vocational expert had identified the two jobs and gave us specific numbers. I think it totaled somewhere between 40 and 50,000. I asked, what data is that based on? The vocational expert said that it's based upon Department of Labor statistics, BLS, and SkillTran. So after the hearing, I looked it up. Vocational expert was wrong. I prepared a two-page thorough memorandum to the ALJ and submitted 100 pages of backup. The papers show that there was only, at most, 3,000 photocopy machine jobs and roughly 1,300 presser jobs. The vocational expert admitted my memo into the record, apparently didn't give it weight, never tells us why. She just says, the vocational expert said so. Well, that's not enough on the BSTEC. On the BSTEC, they addressed whether the individual could request the information, which I did, and whether that failure to provide the information was an automatic lack of substantial evidence. This is different, because BSTEC tells us the data is the best evidence. It should be produced, but it's not required to be produced. So I asked for it, I didn't get it, so I got it, and I submitted it. And it proved the vocational consultant was wrong, and nobody's addressed it. To this day, nobody's addressed it. Instead, the commissioner came back and says, oh, that argument was waived. I raised it in the district court. They don't think I raised it thorough enough. But I put in a sentence that I indicated that there's a conflict, it wasn't identified, and it wasn't resolved by the ALJ. And I gave the citation to my two-page memo and the hundred pages of data that was submitted with it. That should be enough. In response, in my reply, I repeated it. There it is. Nobody's responded. There's been no identification and resolution. So I don't understand your math in some of the stuff you submitted after that hearing. As I understand it, for example, in your calculation of the market for photocopying machine operators, you took the total number of light unskilled jobs and multiplied it by the percentage of jobs that do not require occasional or greater than occasional contact with others, the percentage of jobs that are part-time, and the percentage of jobs that require less than 31 days of training. But those could be overlapping. And therefore, a simple multiplication is erroneous under sort of elementary statistics. Your Honor, I would have to agree with you. They do overlap. The question is, what's the best method to do it? Now, if the administrative law judge gave us that argument, then it would be properly before us. But the judge ignored it. We can't look at the commissioner's photocop rationale. The judge has to do it. And I would have addressed it then if somebody had asked me. Truth of the matter is, two jobs aren't enough. Doesn't really matter. Truth of the matter is, the vocational expert said they're not performable. Doesn't really matter. But when we get to the end of the day, can I tell you that my calculations are 100%? You're right, there may be overlap. But I can tell you the vocational expert's wrong. I can tell you that because he didn't erode the numbers at all for any limitation regarding the ability to interact with coworkers or supervisors. It's just not there. No reduction at all. And so there is no substantial evidence that Ms. Lindstrom can perform jobs at step five of the sequential evaluation process. Now, when we get beyond that, I want to talk about the other issues. I have very little time. So let me talk about, first, her reported symptoms. Clearly, what she reported to the judge would establish disability. Clearly, what she reported to her doctor would establish disability. There's no evidence of exaggeration of malingering. There was no finding by the ALJ of exaggeration of malingering. There was one indication in this record at one point where she was crying for help because she kept getting denied and she was pursuing her disability claim. That's not evidence of exaggeration of malingering. And the judge did not find exaggeration of malingering. So why did the judge disbelieve her? Well, if you read the decision, the judge says there's not enough objective data. But when you look at the severe impairments and you look at the restrictions that were assessed, boy, we're right there. That's hard to accept. But even if we were to accept it, that's not enough under Lester. There's got to be more. So the judge pointed to the activities of daily living. What were those activities? Well, she said, oh, she can take care of her personal hygiene. She can feed and take care of her pet. And she helps to take care of her father-in-law with dementia. So let's go back to the record and take a look. Where are those things found? And you can see first where it says that she helps take care of her father-in-law with dementia. That's at page 1, 2, 6, 7 of the transcript. And it says she and her husband help when they can. When they can. Not they can just help. Well, what about the pets? Well, let's look at page 412 to 414. What does that say? I feed them and I brush them and my husband reminds me to brush them. She takes care of her hygiene. She does. She doesn't shower every day, but she does. That does not mean she's not disabled. That does not mean that she doesn't need to rest, lie down, take naps. She has mental breakdowns during the day. She can't interact with other people. Oh, and the judge said she shops. I think the record at 412 to 414 says she does shop with her husband twice a month. Come on. Those are not the type of activities that demonstrate an ability to work. And then we have every doctor that's seen her said she can't work. Her treating doctor, the two psychological consulting physicians, and the consulting physical examining physician. And this claim was filed back before 2017. We have a hierarchy here when we look at medical evidence and doctor opinions. And so what happened here? The judge said, I'm going to order these CEs. And I said, judge, why? We're so far out of the DOI. What's the purpose? She goes, I want them. Because we know if they came back unfavorable, she would have said, well, there was no significant change between 2013 and 2018, so I find not disabled. But they came back favorable. So then she says, oh, they're after the DOI. What good are they? Smith tells us the judge is now obligated to go review that record and see if those restrictions were in existence earlier. Now, the commissioner argues, well, the doctors didn't do that. The doctors didn't say it existed earlier. Well, that's true. The doctors didn't. But that's not the doctor's responsibility. It's the judge's. That's what Smith tells us. Based upon this record, Ms. Lindstrom should get an immediate award of benefit. Now, this record tells us that she couldn't afford her hearing aids. This record tells us she went behind on her mortgage. This record tells us the claim was expedited due to hardship. And then there was a trustee sale. Now, I believe that ultimately that trustee sale got resolved. I don't know for sure. But she was five months behind and had a scheduled trustee sale of her home. This lady worked consistently and consecutively her entire life. She made over $900,000 that she paid taxes on into this system. And this system failed her. I'm hoping we get to fix it. Okay, thank you, counsel. We'll give you a minute for rebuttal. I appreciate it. Hold on one second, Ms. Bond. All right, you may proceed when you are ready. Good morning, your honors. I just want to confirm that you can actually hear me. Yes, we can. Thank you. My name is Shay Bond and I represent the Commissioner of Social Security in this matter. I just want to start to by addressing Mr. Suppy's initial comments, which I was surprised to hear because most of it was not, if I'm remembering correctly, a lot of the argument was not raised in the briefing. And of course, we do have the assertion, the government's assertion that the issues that he has been raising about the vocational evidence in this case has been waived or forfeited because it wasn't sufficiently preserved in the district court. The district court itself had said that to the issue to the extent that I hadn't been, hadn't been explained. And when we look at the issues that he brought up in his opening brief for this court, some of which he touched on today, but some he has not, were brand new issues that were never raised in the district court. And even looking at the letter that Mr. Suppy had submitted to the ALJ, the two-page letter, I'm going to disagree that it was detailed as he claims to, claims that it was. It was very perfunctory. And again, it didn't raise the issues that he's now raising before this court. So it's our position that his challenge to the vocational experts testimony is waived. If the court feels that it is not waived, I can get into why we believe that the ALJ's decision adequately addressed that evidence. Otherwise, I would move on. Well, I don't know where I come out on the waiver issue, but I'd be happy to hear what you have to say. Assuming we find there's not waiver. Of course, Your Honor. Well, the first point I would raise is that under the recent Kilpatrick case, which we did say in our brief, the evidence that claimants submit has to be significant and probative evidence to impeach what this court has held to be inherently reliable evidence. And that's the vocational experts testimony. So what did Kilpatrick look at? Kilpatrick looked at whether the plaintiff's data used the same methodology, same data that the vocational expert did. And we don't have that here. So the vocational expert had testified that to using SkillTran, which is essentially the Job Browser Pro Program, which filters government data. What methodology and data that plaintiff has submitted is from a different program called AkiCollect. And as we highlighted in our brief, the 11th Circuit in a single case has questioned the relationship between the AkiCollect data and the government data, which it alleges that it pulls the information from. So we question the reliability and accuracy of AkiCollect, would be our first point. Secondly, Mr. Southeen here today has acknowledged that, according to your Honor's questioning, that his interpretation of that raw data coming from AkiCollect isn't necessarily accurate. And that was another factor that the Kilpatrick court looked at was that the attorney had actually admitted, maybe more candidly, that his data probably was not accurate. So I would say that in those two factors, the quality of the data that has been submitted is just insufficient, again, to impeach what this court has deemed as inherently reliable evidence coming from a vocational expert. I would also point out that the ALJ actually did address the alternative data. And it gave the reasons why she was relying on a vocational expert instead. So I disagree that the ALJ didn't actually provide an analysis. And it was valid. It was that the testimony had the support of the DOT, particularly in terms of the skill level, with the vocational, excuse me, the SVP requirements for those jobs. Counsel, the ALJ found that she would be off task five percent of the time. Did the VE take into account that five percent? Yes, I believe the vocational expert did. And testified that there were, you know, jobs available. This is one of the issues that I was surprised to hear at today's argument because I honestly don't believe that was specifically raised in this case as a challenge. So I'm not exactly sure how to respond to that because it's essentially the first time I'm hearing about it. But the vocational expert had the limitations that the ALJ had found were supported by this record and did testify that those two occupations existed and that there are thousands of jobs within them. So it's our position that the vocational expert's testimony is the substantial evidence supporting the step five finding here. If there are no more questions about the vocational challenge, I would like to move on to the physician opinions. And I disagree with counsel's characterization that all of the medical opinions in this record supported a finding that the claimant was disabled or supported the extent of her description of her limitations coming from her impairments. I mean, that's not true. We have Dr. Steingard, who I know plaintiff believes supports her position. But Dr. Steingard's limitations actually accommodated for in the RFC finding. Dr. Steingard had assessed the opinion that the claimant would likely distract others during the workday. And then the ALJ includes a very restrictive limitation on the interactions with others. So it's limited to occasional. And then within that occasional time frame, it's only going to be superficial, casual. And I think it was described as incidental to actually the work performed. So there's nothing in Dr. Steingard's opinion that would actually show that the claimant was disabled. It's actually consistent. Plaintiff doesn't put it on their brief, didn't challenge the ALJ's assessment of the medical expert's testimony, which was also for a reduced range of light work. That would support the ALJ's RFC finding that the claimant is not disabled. We have Dr. Rabara and Frachman, who counsel is challenging the ALJ's rejection of those opinions as being not time relevant. But the ALJ rationally determined after reviewing those two reports, that the doctors did not actually state that those opinions related back. So and Dr. Frachman affirmatively stated in the report that the opinion did not relate back to any period when specifically asked if those limitations would be relevant to any earlier period in time than the 2015 examination. The doctor declined to write in any earlier date and actually said this is not applicable. With Dr. Rabara also did not affirmatively state in the report that the limitations described were retroactive to the insured period. But we would also submit that the limitations, the mental limitations as described are again, actually not inconsistent with the ALJ's RFC finding. So Dr. Rabara found lots of limitations that were mild where there actually were no limitations. And that was consistent with the ALJ's RFC finding for unskilled work. And the moderate limitation on social functioning, again, is accommodated by the very detailed and very restrictive RFC on social functioning. And then there was an assessment of marked limitation on handling of changes to routine work setting. And that was also accommodated in RFC finding by saying that such changes would have to be infrequent or gradual. So, again, I disagree that the majority of the opinions in this case actually supported the finding of disability. And then turn to the evaluation of the claimant's subjective statements. I know Council is focusing on the activities of daily living. It's our contention that the ALJ did not interpret the activities as being consistent with the capacity to perform a eight-hour workday. It was just one factor the ALJ considered in conjunction with, you know, what did the objective evidence show in this case? What did the treatment regimen that claimant underwent? What was the nature of that treatment regimen? And how successful was it? So it was just one component of the ALJ's evaluation of this record. And even if you... Even if the court were to find that perhaps here, the daily activities weren't as extensive as they would need to be to support the ALJ's conclusions, it would be our submission that the ALJ's evaluation of the objective evidence and the treatment record on its own would be sufficient to support it. So that at best, it would be... Or sorry, at worst, it would be a harmless error. So it is our position that this ALJ's decision is actually a very thorough ALJ's decision. It looked at the evidence that both supported... Pretend to support the claimant's statements or doctor's opinions. And then the evidence that would detract from it. And it was fairly reflected in the ALJ's summary of the evidence related to all polio claimants individually that the claimant was alleging that disabled her. And in discussing the medical opinions. And, you know, certainly maybe another adjudicator could have looked at this record and reached the conclusion that the claimant was disabled or had been more limited. But the question that this court is charged with answering is whether substantial evidence supports the ALJ's conclusions. And that's despite any evidence that could tend to support the claimant's alternative view of this record. And because the evidence supports the ALJ's analysis and conclusion. With that balancing, this court must affirm the ALJ's decision. Okay. Any questions from my colleagues? All right. Thank you very much, counsel. Thank you. All right. One minute, sir. Thank you. So, your honors, with respect to the bathroom usage, the vocational expert testimony where the individual says that no work is sustainable, that's at ER 1718. I'm a little concerned, counsel, that you did not raise this to the appeals counsel or to the district court. And I can't find it in your brief. I can't find any reference in section in part two of your brief that refers to the 5% problem. It clearly is raised generally before the district court because the district court comments on it, but not the point that you've made today. That is that the VA failed to take account of that or that the VE in his testimony said she couldn't work if that was the limitation. So, and I don't recall, and I did look at the briefs, I don't recall, and I understand what your question is. But the issue that we've always presented is, is this decision supported by substantial evidence? Sure, but that's just, that's a general proposition. You do have to supply some detail to the agency and then again to the district court and then to us. And then it's a little unfair to come on oral argument and say, well, I'm here to talk about substantial evidence and then launch into something different that hasn't been addressed in any of the written product. I understand that. I don't know the answer to your question. Because it seems to me that you put a lot of emphasis on and it seems to me that it's an important point. But it doesn't appear to me that you've raised it in your briefing to us and it doesn't appear that you raised it in your briefing to the district court. Okay, I understand what you're saying, Judge. But I would say that, you know, it's a factual issue and questions of fact generally aren't waived. And there are certainly exceptions to the waiver argument as well. But, you know, here where it's the commissioner's burden of proof and we have to look, we have to test it for substantial evidence. So, and I understand your concern. But let me just give you the sites that I looked at. And so we have 1718. We also have 1711 that talks about the superficial contact and the incidental contact. B-STEC, I believe, well, it's in the brief. But 139 Supreme Court, 1148. Maxwell at 971 F3D, 1128. I did want to point out, and this is at, I'm sorry for walking away. In the report of Dr. Steingard where the commissioner says she doesn't believe it's supportive of disability, it says she would not be able to work with this presentation. It's just, it's part of it. And she clearly says it. All right, so counsel, let's wrap this up. Okay. Dr. Jones, the VE, said no work based on that opinion at 1669. Fruckman specifically said no work. So, thank you. I appreciate your time. And I appreciate you inviting me here today to speak with you. Thank you, counsel. Thank you both, counsel, for their argument and briefing. This matter is submitted. And this particular panel, I would say if it's recess or adjourned, this particular panel is adjourned. And we are on recess tomorrow with a different panel. I think that's the way to say it. Thank you, everybody. All rise. See, he was just one person. Maybe you just, you know, your recess or adjourn. It's a little easier. Thank you. The court for this session now stands adjourned. Thank you.
judges: BYBEE, OWENS, Rakoff